IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**LEE STONE**,

    Plaintiff,

v.                                                           No. 13cv1192 WJ/GBW

**FAIRY PURIFOY;**
**ATTORNEY JOHN R. HAKANSON,** in his
Individual and Official[1] Capacity;
**JUDGE DAVID P. REEB, JR.,** in his Individual
and Official Capacity; and
**STATE OF NEW MEXICO,**

    Defendants.

**MEMORANDUM OPINION AND ORDER**
**DENYING IFP AND DISMISSING COMPLAINT**

**THIS MATTER** comes before the Court on pro se Plaintiff Lee Stone's *Application to Proceed in District Court without Prepaying Fees or Costs* (hereinafter called "motion to proceed IFP"), filed December 16, 2013, *see* Doc. 2, and on the Court's concomitant obligation "to review the affidavit and screen [his] case under 28 U.S.C. §§ 1915(a) and (e)." *Lister v. Dep't of Treasury*, 408 F.3d 1309, 1311 (10th Cir. 2005). The Court will deny IFP and dismiss his Complaint.

**I.   APPLICABLE LEGAL STANDARDS**

Screening the case under § 1915(e) includes determining whether "the allegation of poverty is untrue" as well as determining whether the action "is frivolous or malicious, . . . fails to state a claim on which relief may be granted; or [] seeks monetary relief against a defendant who is immune from such relief." § 1915(e)(2)(A), (B). "[I]n order to succeed on a motion to

---

[1] The Complaint states no facts indicating that attorney Hakanson is a state or federal official of any kind.

proceed IFP, the movant must show a financial inability to pay the required filing fees, as well as the existence of a reasoned, nonfrivolous argument on the law and facts in support of the issues raised in the action." *Lister*, 408 F.3d at 1312. A party wishing to proceed IFP must demonstrate that he "cannot because of his poverty pay or give security for the costs . . . and still be able to provide himself . . . with the necessities of life." *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

Even if an applicant is indigent, the Court should deny ifp and must "dismiss the case" if it determines that any of the conditions in § 1915(e)(2)(B) exist. *See* § 1915(e)(2); *Trujillo v. Williams*, 465 F.3d 1210, 1217 n.5 (10th Cir. 2006) (noting that dismissals under § 1915(e)(2)(A) & (B) are mandatory).

The Tenth Circuit Court of Appeals has set forth the following standards that district courts should apply in resolving a motion to dismiss brought under rule 12(b)(6) of the Federal Rules of Civil Procedure.

> *Bell Atlantic Corp. v. Twombly* [] reject[ed] the "no set of facts" language of *Conley* [ *v. Gibson*, 355 U.S. 41, 45-46 (1957),] and announc[ed] a new (or clarified) standard: to withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." --- U.S. ----, ----, 127 S. Ct. 1955, 1974, 167 L. Ed.2d 929 (2007). Under this revised standard, as we explained in *Ridge at Red Hawk, L.L.C. v. Schneider*:
> 
> > the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.
> 
> 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). The burden is on the plaintiff to frame a "complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief. *Twombly*, 127 S. Ct. at 1965. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

The Court applies this same standard in its review under § 1915(e)(2) to determine whether Stone has stated a cognizable federal claim.  *See Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007).  The Court will accept as true Stone's allegations and construe them, and any reasonable inferences to be drawn from them, in the light most favorable to him.  *See id.*  But the Court "will not supply additional facts, [or] construct a legal theory for [a] plaintiff that assumes facts that have not been pleaded."  *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989).

The courts take a two-step approach in determining whether a complaint states a claim upon which relief may be granted.  First, it "identif[ies] the [conclusory] allegations in the complaint that are not entitled to the assumption of truth" and disregards them.  *Ashcroft v. Iqbal*, 556 U.S.662, 680 (2009).  Then it only "consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief."  *Id.* at 681; *see id.* at 686 (rejecting the plaintiff's argument that he sufficiently stated a claim for relief by generally alleging that the defendants "discriminated against him 'on account of [his] religion, race, and/or national origin and for no legitimate penological interest,'" and stating, "[w]ere we required to accept this allegation as true, respondent's complaint would survive petitioners' motion to dismiss.  But the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context.") (citations omitted).

## II.   ALLEGATIONS IN THE COMPLAINT

Stone alleges that, in 2005, Defendant Fairy Purifoy became the personal representative of Fred Cavender, who died in 1959, and who apparently was an heir of Peter Cavender, who died in 1920.  *See* Compl. at 4-5.  Purifoy is not blood-related to Fred.  *See id.* at 5.  Peter had

homesteaded some property in Quay County, New Mexico, which, for an unexplained reason, was not probated after his death. *See id.* at 4. Stone states that he "acquired" possession of the property in 1982 from Henry Pitman, whom Stone alleges had been in possession of the property for thirty years. *See id.* at 5-6. In her position as Fred Cavender's personal representative, Purifoy deeded the property to herself in 2005. *See id.* at 5. Through her attorney John R. Hakanson, Purifoy then filed a Quiet Title Action regarding the property in the Tenth Judicial District Court of New Mexico on December 5, 2007. *See id.* at 6. Stone alleges that Purifoy failed to properly publish the notice of Quiet Title, and that she was granted a default judgment on August 21, 2007. *See id.* Stone states that Purifoy and Hakanson both knew that Stone had an interest in the property, but that they failed to properly "name and serve process" on him as required by the New Mexico state rules of civil procedure. *See id.* Stone also inconsistently alleges that he was, in fact, "named as a real party in interest" in the Quiet-Title action, but states that he "was never notified" of the action. *Id.* at 7. After quieting title in her name, Purifoy sold the property to third parties, who, using the deed from Purifoy as proof of their ownership, "ousted" Stone from the property in 2007. *See id.* at 6.

In August 2011, Purifoy, through Hakanson, apparently reopened the Quiet-Title action and sought a protective order and a money judgment against Stone. *See id.* Stone states that state District Judge David P. Reeb and Hakanson "conspired and conducted a hearing [on the matter] . . . which was not calendared by the Court and without any notice of any kind" to Stone. *Id.* at 7. Stone states that Judge "Reeb conspired with Hakanson and issued a protective order 10/17/2011 combined with a monetary judgment against [] Stone" without "serving notice" to Stone, thereby "violating due process and equal protection of the laws." *Id.* When Stone

"discovered" the order in July 2012, Stone moved to reopen the case, "pointing out Purifoy's fraudulent claims." *Id.* Judge Reeb then allegedly conspired with Hakanson by filing a "slanderous" order denying Stone "his right to be heard, the right to self-representation and defend against Purifoy's claims, and restricted [] Stone's access to the court, violating due process and equal protection of the laws." *Id.* As justification for restricting Stone's right to file documents in the Quiet-Title action, Judge Reeb stated in his order that Stone had "engaged in a pattern of vexations filings." *Id.* at 8. Judge Reeb also stated in the order that Stone "had exhausted his appellate remedies," even though Stone had not yet filed any appeal documents in the Quiet-Title action. *Id.*

Judge Reeb refused to set aside the October 2011 judgment, holding that "there exists no mistake, inadvertence, surprise, or excusable neglect," and that "there exists no newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial." *Id.* Judge Reeb also ruled that "Hakanson did not engage in any fraud," by allegedly "fake reading," at the August 2011 hearing, what Stone contends was "a notice of hearing that never existed." Compl. at 8.

Stone alleges that the State of New Mexico "refused to investigate and prosecute" Purifoy, Hakanson, and Judge Reeb for "their criminal acts violating New Mexico laws committed against [] Stone," and "refused to protect [] Stone from the crimes," thereby refusing Stone the "equal protection of the laws." *Id.* Stone states that he has "exhausted his State remedies." *Id.*

In Counts I, II, and III, Stone contends that Purifoy, Hakanson and Judge Reeb each violated 42 U.S.C. § 1983 by conspiring and "committing perjury and fraud, obstructing justice,

5

tampering with and fabricating evidence" in the state district court. *Id.* at 10-13. He states that Judge Reeb, "acting under color of state law, discriminated and abused his power and discretion against [] Stone with a bias and scandalous nature . . . on July 9, 2012, and prior thereto." *Id.* at 13. He states that Judge Reeb subjected him to "an unjust and hostile judiciary, using perjury to deprive [] Stone of an opportunity of redress . . . ." *Id.*

Count IV is brought under 42 U.S.C. § 1985 and alleges that all four Defendants conspired to deprive Stone of "equal protection of the laws and of equal privileges and immunities." *Id.* at 14. Stone alleges that the Defendants "actively conceal[ed] Purifoy's criminal acts of stealing the real estate in question from [] Stone's possession." *Id.* at 15.

Count V alleges violation of § 1983 by the State of New Mexico by "allow[ing] Reeb, New Mexico's employee, to act criminally and in a retaliatory nature, obstructing justice depriving [] Stone access to the courts." *Id.* at 15-16.

Count VI is brought under 42 U.S.C. § 1986 against Judge Reeb and the State, and it alleges that these two Defendants "had knowledge of crimes and that wrongs were conspired to be done and had the power to prevent or aid in preventing Purifoy and Hakanson's conspiracy and refused to do so." *Id.* at 17.

Count VII is a state-law claim for intentional infliction of emotional distress against all four Defendants based on the factual allegations set out above. *See id.* at 18.

Stone seeks "rescissory," actual and punitive monetary damages, and injunctive and declaratory relief of an undescribed nature. *See id.* at 19.

## III. ANALYSIS

**A. Stone has failed to state cognizable claims under § 1983.**

### 1. Judge Reeb is absolutely immune from suit.

The United States Supreme Court has long held that judges, acting in their judicial capacity, are entitled to absolute immunity from all suits, including those actions brought under § 1983. *See Stump v. Sparkman*, 35 U.S. 349, 356-57, 359 (1978) ( holding that "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction" and that a judge is not subject to suit "even if his exercise of authority is flawed by the commission of grave procedural errors") (internal quotation marks omitted). Judge Reeb is absolutely immune from Stone's suit, thus Stone's claims against him must be dismissed.

### 2. Stone cannot sue the State of New Mexico under § 1983.

Similarly, it has long been held that a plaintiff may not sue a state, its agencies, or its officials acting in their official capacities (except for prospective injunctive relief in limited circumstances) under § 1983. "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity." *Will v. Michigan*, 491 U.S. 58, 66 (1989). Stone has failed to state a cognizable claim against the State, which is immune from suit.

### 3. Stone has not stated a claim under § 1983 against Purifoy or Hakanson.

To state a claim under § 1983, a plaintiff must show that he was injured as a result of state action. *See Gallagher v. "Neil Young Freedom Concert,"* 49 F.3d 1442, 1447 (10th Cir. 1995). A person acts under color of state law if he "exercise[s] power 'possessed by virtue of

state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988). "Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotation marks omitted).

Stone contends that Purifoy and Hakanson, who both are private individuals, acted under color of state law based on an alleged conspiracy with Judge Reeb. To state a cognizable claim for state action based on a private actor's alleged conspiracy with a state official, "the critical inquiry . . . is: Has the plaintiff demonstrated the existence of a significant nexus or entanglement between the absolutely immune State official and the private party in relation to the steps taken by each to fulfill the objects of their conspiracy? *Norton v. Liddel*, 620 F.2d 1375, 1380 (10th Cir. 1980).

It has long been held that "a private party's mere invocation of state legal procedures does not constitute joint participation [with a judge] and thus is not state action" *Read v. Klein*, No. 99-5058, 1 Fed. App'x 866, 871, 2001 WL 20818, **5 (10th Cir. Jan. 9, 2001) (affirming dismissal of § 1983 action against private party and his attorney for obtaining an order that the plaintiff alleged violated his constitutional rights). In *Torres v. First State Bank of Sierra County*, 588 F.2d 1322 (10th Cir. 1978), the Tenth Circuit first addressed the question whether "there is state action simply because in litigation in a state court that court exercised its authority to issue an order which we assume to be wrong and which did not give the debtor his rights to procedural due process." 588 F.2d at 1325-26. The Tenth Circuit held

> that to make out a cause of action under the Civil Rights Statutes, the state court proceedings must have been a complete nullity, with a purpose to deprive a person of his property without due process of law. To hold otherwise would open

> the door wide to every aggrieved litigant in a state court proceedings, and set the federal courts up as an arbiter of the correctness of every state decision. . . . .
>
> We do not think that the "color of law" reference in § 1983 was intended to encompass a case such as this one, where the only infirmities are the excesses of the court order itself, subject to immediate modification by a court having jurisdiction over the parties, and subject to the normal processes of appeal.

*Id.* at 1326-27.  Thus, the Court ultimately held that the private party's use of a state court to obtain an ex parte temporary restraining order, which allegedly violated the plaintiff's right of due process of law, did not constitute a sufficient nexus giving rise to the requisite action under color of law.  *See id.*

Further, "[w]hen a plaintiff in a § 1983 action attempts to assert the necessary 'state action' by implicating state . . . judges in a conspiracy with private defendants, mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action."  *Sooner Prods. Co. v. McBride*, 708 F.2d 510, 512 (10th Cir. 1983).  This "standard is even stricter where the state officials allegedly involved in the conspiracy are immune from suit, as [is] the state court judge[ ] here."  *Id.*

The Court concludes that Stone's allegations of conspiracy are merely conclusory and that they do not tend to show agreement or concerted action between the Defendants and Judge Reeb.  Therefore, Stone has failed to allege a cognizable federal cause of action against Purifoy or Hakanson.

**B.  Stone has failed to allege a cognizable cause of action under § 1985.**

Stone does not indicate which subsection of § 1985 he is suing under.  As discussed below, none of § 1985's three subsections apply to the facts of Stone's Complaint.

9

> Section 1985(1) makes unlawful actions of two or more persons that prevent officers of the United States from discharging their duties. *See* 42 U.S.C. § 1985(1) ("If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof...."). As the clear language of the statute provides, § 1985(1) only applies when federal officers are prevented from discharging their duty. *See Kush v. Rutledge*, 460 U.S. 719, 724-25, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983).

*Gallegos v. Jicarilla Apache Nation*, No. 02-2347, 97 Fed. App'x. 806, 811, 2003 WL 22854632, *4 (10th Cir. Nov. 28, 2003). Stone has failed to state a claim under § 1985(1).

"Section 1985(2) provides a damages remedy for conspiracies to retaliate against an individual for attending or testifying in a federal court proceeding." *Wopsock v. Natchees*, No. 06–4215, 279 Fed. App'x 679, 687, 2008 WL 2152435, *7 (10th Cir. May 23, 2008). Clearly, Stone's factual allegations do not invoke the protections of this subsection.

To state a claim for conspiracy under 42 U.S.C. § 1985(3), a plaintiff must allege facts showing that the

> [d]efendant (1) conspired, (2) to deprive Petitioner of equal protection or equal privileges and immunities under the law, (3) acted in furtherance of this objective, and (4) injured Petitioner or deprived him of any right or privilege as a result. *See Griffin v. Breckenridge*, 403 U.S. 88, 103, 91 S. Ct. 1790, 29 L. Ed. 2d 338 (1971). The intent behind the conspiracy must be based on some invidious discriminatory animus, such as racial or otherwise class-based animus. *Id.* at 102, 91 S. Ct. 1790.

*Wolfson v. Bruno*, No. 07-4205, 265 Fed. Appx. 697, 698, 2008 WL 398806, **1 (10th Cir. Feb. 14, 2008). Stone has alleged no facts to indicate that the Defendants conspired because of racial or class-based animus against him. He has failed to state a cognizable claim under § 1985(3).

### C. Stone has failed to state a cognizable claim under § 1986.

"Section 1986 provides a damages remedy against any person with knowledge of a § 1985 conspiracy who fails to take action to prevent the harm." *Wopsock,* 279 Fed. App'x at 687,

2008 WL 2152435, *7. Thus, a cognizable § 1986 "claim is dependent on the existence of a cause of action under section 1985." *Brown v. Chaffee*, 612 F.2d 497, 502 (10th Cir. 1979); *see Brown v. Reardon*, 770 F.2d 896, 907 (10th Cir. 1985) (holding that the "district court did not err in finding that the § 1986 claim is dependent upon the existence of a valid claim under § 1985"). Because Stone has failed to state a valid claim for violation of § 1985, he has also failed to state a valid claim under § 1986.

### D. The Court will dismiss the state-law claim.

"[D]istrict courts may decline to exercise supplemental jurisdiction over [state-law] claim[s] . . . if . . . the district court has dismissed all claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(3). "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998); *see Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995) ("Now that [the plaintiff's] federal claim has dropped out of the picture, her state law claim of intentional infliction of emotional distress is no longer supplemental to any federal question claim. Under those circumstances the most common response to a pretrial disposition of federal claims has been to dismiss the state law claim or claims without prejudice . . . ."). The Tenth Circuit has more recently held, albeit in an unpublished opinion, that "any state-law claims for assault and battery or mental and emotional injury [are] inappropriate subjects for the exercise of pendent jurisdiction where all federal claims had been dismissed." *Endris v. Sheridan Co. Police Dep't*, No. 10–8052, 415 F. App'x 34, 36, 2011 WL 441694, *2 (10th Cir. Feb. 9, 2011). *See also Brooks v. Gaenzle*, 614 F.3d 1213, 1230 (10th Cir. 2010) (noting that the Tenth Circuit has ruled that "pendent jurisdiction

over state claims 'is exercised on a discretionary basis' and [has] generally held that '[i]f federal claims are dismissed before trial, leaving only issues of state law, 'the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice;'" reversing the district court's grant of summary judgment on the state-law claim, which the district court had granted after it had dismissed the federal claims; and remanding the case with instructions for the district court to dismiss the state-law claims without prejudice).  The Court will dismiss the state-law claim without prejudice.

**IT IS ORDERED** that Stone's motion to proceed IFP (Doc. 2) is DENIED; and that his Complaint is DISMISSED.

_____
**UNITED STATES DISTRICT JUDGE**